368 A.2d 799
**COMMONWEALTH of Pennsylvania**
v.
**Frank PICKETT, Appellant.**

Superior Court of Pennsylvania.
Submitted March 22, 1976.
Decided Dec. 15, 1976.

Calvin S. Drayer, Jr., Asst. Public Defender, Norristown, for appellant.

Stewart J. Greenleaf, Asst. Dist. Atty., William T. Nicholas, First Asst. Dist. Atty., Milton O. Moss, Dist. Atty., Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred when it refused to charge the jury that intoxication or drugged condition of the accused could negative the intent required for a finding of guilt.

On November 13, 1974, the Montgomery County Grand Jury indicted appellant on charges of burglary,[1] theft of movable property,[2] receiving stolen property,[3] and criminal conspiracy.[4] On May 1, 1975, a jury returned a verdict of guilty on the charges of burglary, theft and conspiracy. On May 20, 1975, the lower court denied appellant's post-trial motions and sentenced appellant to a term of imprisonment of 3 to 10 years for burglary and to suspended sentences on the other charges.

Prior to jury deliberations, appellant submitted a point for charge based on *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). The following colloquy occurred between the court and appellant's attorney:

"[Counsel]: Your Honor, since there is evidence in this case of drugs and use of alcoholic beverages, I request that you charge under *Commonwealth v. David Lee*

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3502.
2. The Crimes Code, supra; 18 Pa.C.S. § 3921.
3. The Crimes Code, supra; 18 Pa.C.S. § 3925. At the conclusion of the case the lower court directed a verdict of acquittal on this charge.
4. The Crimes Code, supra; 18 Pa.C.S. § 903.

*Graves,* in the fact that they have to take into considera-
tion the alcoholic affect on [sic] intoxication. I have a
formal point for charge, if your want me to, I will read it.

"THE COURT: I have read it. Anything else?

"[Counsel] : That's all I have, Your Honor.

"THE COURT: I don't know whether to read it or
not. It seems to me when a defendant gets up and says
I entered the property knowing what I was doing, i. e.
looking for somebody and not with the intent to commit
a crime, I don't see how you are entitled to the charge
under intoxication . . . . .

". . . I am going to deny it, because I think it
has no application to this case."

Initially, there is no dispute that the court erred
in refusing the requested charge. In *Commonwealth v.
Rose,* 457 Pa. 380, 384–85, 321 A.2d 880, 882 (1974), our
Supreme Court upheld the appellant's contention that *In
re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368
(1970), "dictates that placing any burden on the defend-
ant to prove intoxication offends the Due Process clause
of the Fourteenth Amendment." The Court held that
"[i]n any criminal prosecution, the Commonwealth has
an unshifting burden to prove beyond a reasonable doubt
all elements of the crime. One of such elements in first
degree murder is, of course, a specific intent to kill.
This burden is neither increased nor diminished by an
attempt by a defendant to disprove the element of intent
by a showing of lack of capacity, due to intoxication, to
form such an intent." Subsequently, the Supreme Court
further clarified Pennsylvania law on the relevance of in-
toxication. In *Commonwealth v. Graves,* supra, 461 Pa.
at 122–23, 334 A.2d at 663, the Court reiterated the fun-
damental principle that intoxication does not excuse
criminal conduct, but stated that "[t]he only permissible
probative value evidence of intoxication may have in crim-
inal proceedings is where it is relevant to the question
of the capacity of the actor to have possessed the requi-

site intent of the crime charged. Where the legislature, in its definition of a crime, has designated a particular state of mind as a material element of the crime, evidence of intoxication becomes relevant if the degree of inebriation has reached that point where the mind was incapable of attaining the state of mind required. It must be emphasized that . . . *it may in some instances be relevant to establish that the crime charged in fact did not occur.*" (Emphasis added.) *Graves* rejected the view that the foregoing principle was limited to felonious homicide, thereby overruling *Commonwealth v. Tarver,* 446 Pa. 233, 284 A.2d 759 (1971). As noted by the Court, the legislature had already extended that principle to all offenses in which such evidence was " 'relevant to negative an element of the offense.' " 461 Pa. at 127, n. 8, 334 A.2d at 665, n. 8, citing the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 308.

Thus, under the law at the time of the commission of the offense, once he placed his sobriety in issue, the Commonwealth had the burden of proving that appellant was capable of forming the requisite intent. See *Commonwealth v. Rose,* supra. The only question which remains is what disposition is proper. Rephrased, if we remand for a new trial, must the lower court instruct the jury under the law at the time of appellant's offense or under § 308 as it now reads?

Read together, *Rose* and *Graves* hold that, because Pennsylvania law permits the introduction of intoxication on the issue of intent as a matter of evidentiary law, the Commonwealth must bear the burden of proof of sobriety as a matter of constitutional law. After the Court decided *Graves,* the legislature amended § 308, in effect, overruling *Graves:* "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condi-

tion of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." Therefore, evidence of intoxication is no longer admissible in a criminal trial (except if the charge is murder) ; thus, it is irrelevant who bears the burden of proof.

The Commonwealth contends that because the effective date of the amended provision is April 7, 1976, the appellant cannot claim protection of *Graves, Rose* and the Code provisions effective on the date of his crime. The prosecutor argues that on retrial appellant would not be permitted to raise the issue of voluntary intoxication or of being voluntarily drugged and he would therefore not be entitled to a charge incorporated in *Graves'* principles. Therefore, he would then be entitled to a charge no different from the one he received in the trial which he had. The Commonwealth seriously misconstrues the relevance of the evidence of intoxication.

Prior to the recent amendment, § 308 provided that "[I]ntoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution for any offense, evidence of intoxciation or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense." Section 103 defines an "element of an offense" as "[s]uch conduct or such attendant circumstances or such a result of conduct as:

"(1) is included in the description of the forbidden conduct in the definition of the offense;

"(2) establishes the required kind of culpability; . ." Under § 302, which deals with the general requirements of culpability, one determines the requisite mental element by reference to the specific crime. Sections 3502, burglary, 3921, theft by unlawful taking, and 903, criminal conspiracy, the crimes with which appellant was charged, require that the accused act "intentionally." Intent, in turn, requires that the actor must have as

"his conscious object to engage in conduct of that nature or to cause such a result. . . ." 18 Pa.C.S. § 302(b)(1)(ii). We read the foregoing provisions of the Code as follows: to commit burglary and the related offenses, the accused must "intend" to commit those crimes; that is, he must be conscious of engaging in such conduct. If sufficiently drunk, he could not form the intent. Absent proof of an essential element of the offense —here, the intent—the accused was innocent of criminal conduct. Rephrased, the actor may have done the acts, but he did not commit the crime.[5] Thus, before April 7, 1976, an accused did not commit a crime if he was too drunk to form the intent to do the act.

It is clear that the legislature is free to criminalize previously noncriminal conduct. See Pa.Const. Art. II, § 11 & Art. III; see also Act of Dec. 10, 1974, P.L. 816, No. 271; 46 P.S. § 701. However, both the United States Constitution and the Pennsylvania Constitution prohibit passage of *ex post facto* laws. U.S.Const. Art. I, § 9; Pa.Const. Art. 1, § 17.

*Calder v. Bull*, 3 Dall. (U.S.) 386, 390, 1 L.Ed. 648 (1798), is the seminal case construing the prohibition of the federal constitution; "I will state *what laws* I consider *ex post facto laws*, within the *words* and the *intent* of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater pun-*

5. *Graves* was decided under the Penal Code, Act of June 24, 1939, P.L. 872, § 1 et seq., 18 P.S. § 1 et seq., which retained the distinction between general and specific intent. See e. g., *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951). However, while the new Code does not specifically retain that distinction, it is clear that intent is retained as an essential element of the various offenses. See Chapter 3 of the Code on Culpability; see also Jarvis, Pennsylvania Crimes Code and Criminal Law, § 302.

*ishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict. the offender."* (Emphasis in original). Cases construing the Constitutional proscription have suggested that some procedural changes may be permissible, see, e. g., *Malloy v. South Carolina,* 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915); *Rooney v. North Dakota,* 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494 (1905); *Mallett v. North Carolina,* 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901), but that the law cannot be changed to apply retroactively if such a change adversely affects the substantial rights of the accused. *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1897); *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882).

■ Our failure to remand for a new trial would involve the most obvious violation of the Constitutional provision against *ex post facto* laws. Prior to April 7, 1976, a person was not guilty of a crime if he were sufficiently intoxicated so that he could not form the requisite intent. The legislature had the authority to change the law, but not as applied to offenses committed before the effective date of the amendment. Thus, error in denying the charge was clearly harmful.

Because the lower court should have charged the jury pursuant to § 308, we reverse and remand for a new trial.

WATKINS, President Judge, and PRICE and VAN der VOORT, JJ., concur in the result.