398 A.2d 663

COMMONWEALTH of Pennsylvania

v.

Eugene Walter FRANK, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 14, 1977.

Decided Feb. 16, 1979.

454

458

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

Louise G. Herr, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence for first degree robbery, aggravated assault, and terroristic threats.

On August 24, 1974, at approximately 11:00 p. m., appellant and three accomplices entered the Green Acres Inn, a bar and restaurant located on U.S. Route 30 in Chester County, which was owned and operated by the victim. One of the accomplices, John Daniel, had been involved in an altercation with the victim a week previously, and the four men had gone to the bar, according to appellant, to allow Daniel to "straighten out" the matter. Once inside the bar, the men located the victim, and after appellant and Daniel each struck him, appellant escorted the victim out of the

building and into a car. The four men then drove appellant to a secondary road located off U.S. Route 30 in Lancaster County. After they stopped the automobile and ordered him outside, appellant and Daniel threatened, kicked, and beat the victim. During the course of the beating, appellant demanded to know what was in the victim's pockets, and when the victim produced $200 in cash, appellant took it. After taking the money and striking the victim several more times, appellant, Daniel, and the other two accomplices drove off, leaving the victim behind. They returned to U.S. Route 30 and drove back into Chester County. As they were passing by the Green Acres Inn, however, they were stopped by policemen who had been summoned there by patrons of the establishment. Shortly thereafter, the victim also arrived at the inn and identified the men as his assailants.

■■■■ Originally, all charges against appellant arising out of this episode were brought in Chester County. When it was discovered that the road where the victim was beaten and robbed was in Lancaster County, several of the charges in Chester County were dropped and brought in Lancaster County. Eventually, appellant was tried in both counties for the crimes that occurred in each respectively. Appellant now contends that his Lancaster County convictions must be reversed for more than twenty reasons.[1] Below we discuss appellant's most substantial arguments and conclude that although no reversible error was committed at trial, nevertheless, we must vacate the judgment of sentence and remand for the lower court to complete the record and make an adequate determination of whether appellant's rights under Pa.R.Crim.P. 1100 were violated.[2]

1. This court recently affirmed appellant's conviction for the crimes he committed in Chester County. *Commonwealth v. Frank,* 263 Pa.Super. 568, 400 A.2d 607 (1978).

2. Several of appellant's contentions may be dismissed at the outset. Appellant argues first that the victim's identification of him within a half hour of the crime was influenced by unduly suggestive circumstances. The facts, however, show that the victim had an excellent opportunity to observe appellant before and during the commission of the crimes, and that appellant's appearance was highly distinctive.

## I. Double Jeopardy

As already noted, the charges against appellant were brought originally in Chester County. The charges included three counts of simple assault, two counts of aggravated assault, two counts of kidnapping, one count of felonious restraint, one count of terroristic threats, two counts of robbery, and one count of criminal conspiracy. When it was discovered that the scene of the beating and robbery was located in Lancaster County, charges connected with those incidents were dismissed by the Chester County authorities, and appellant was re-indicted in Lancaster County. On February 27, 1975, appellant was convicted in Chester County, and on July 30, 1975, he was convicted in Lancaster

(Appellant was wearing a large Mexican flat brim hat, sunglasses, a cut down denim jacket, denim pants, pointed suede boots, a gold cross and gilt woven swastiska around his neck, and a white bandana tied around his arm. Also, he had a Fu Manchu mustache and a long Van Dyke beard.) Moreover, appellant admitted at trial that he was at the scene of the beating, and indeed, had himself struck the victim several times. Under these circumstances, appellant's assertion that the victim's identification was unreliable is frivolous. *See, e. g., Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976).

Likewise, there is no merit to appellant's argument that he was denied due process when his repeated requests for a pre-trial line-up identification by the victim was denied. Appellant did not have a right to a line-up identification, *Commonwealth v. Evans*, 460 Pa. 313, 333 A.2d 743 (1975), and the lower court did not abuse its discretion in denying a line-up, *Commonwealth v. Sexton*, 246 Pa.Super. 30, 369 A.2d 794 (1977).

Appellant's arguments that the evidence was insufficient to prove that he was guilty of aggravated assault and robbery are also frivolous. The evidence showed that as a result of the beating and stomping received from appellant and Daniel, the victim suffered four broken ribs, a fractured breastplate, a dislocated collar-bone, fractured bones under one eye, and such severe facial swelling that the victim's long-time family doctor did not recognize him on the morning following the incident. This evidence was sufficient to prove that appellant attempted to inflict "serious bodily injury." See 18 Pa.C.S.A. § 2702(a)(1) (1973). The Commonwealth's proof was also sufficient to prove that appellant committed a theft during the beating. (*See* statement of facts, *supra* at 1–2.)

Finally, we do not believe that the lower court abused its discretion in denying appellant's motions to sever his trial from the trial of one of his codefendants, Russell Grant, and to continue the trial so that appellant could obtain the presence of another co-defendant, Frank Kelly, who was incarcerated at the time.

County. Appellant now claims that Chester County had jurisdiction over all the charges, and that because all the charges arose out of the same criminal episode, he was entitled under 18 Pa.C.S.A. § 110 (1973) and the Supreme Court's decision in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *addendum opinion per curiam*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), to a single trial on all the charges.[3] According to appellant, the Commonwealth's failure to consolidate the charges, and its decision to try him twice—once in Chester County and again in Lancaster County—violated his statutory and constitutional right not to be placed in double jeopardy.

Appellant's argument is based on the premise that Chester County had jurisdiction over the crimes committed in Lancaster County, by virtue of 19 P.S. § 525 (1964) (known as "The Journey Act"), which provides in part:

In order to obviate the difficulty of proof as to offenses committed during journeys from place to place, in any

**3.** 18 Pa.C.S.A. § 110 provides:
Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
(1) The former prosecution resulted in an acquittal or in the conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:
(i) any offense of which the defendant could have been convicted on the first prosecution;
(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense
. . . . .
Thus, under this provision, if Chester County had jurisdiction over all the charges, appellant's claim that consolidation was required would be compelling.
In *Campana*, the Court held pursuant to its supervisory powers over state criminal proceedings that consolidation of charges arising out of the same criminal episode was required in prosecutions brought prior to the effective date of 18 Pa.C.S.A. § 110.

indictment for felony or misdemeanor committed on any person or on any property upon any stage coach, stage, wagon, railway car or other such carriage whatever employed in any journey, it shall be sufficient to allege that such felony or misdemeanor was committed within any county or place through any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; . . . and every such felony or misdemeanor . . . shall and may inquired of, tried, determined and punished in the county or place within which the same shall be so alleged to have been committed in the same manner as if it had actually been committed therein.

A review of previous interpretations of this provision, however, indicates that the Journey Act does not have the breadth appellant would give it.

In *Commonwealth v. Tarsnane*, 170 Pa.Super. 265, 85 A.2d 606 (1952), this court held that the Journey Act did not apply in a situation where the defendant had enticed a child into his car, driven to a vacant house, assaulted the child in the house, and then returned the child to the neighborhood where he had first met her. This court pointed out that the Act was intended to obviate difficulties in proof of the locus of a crime, whether in one county or another, committed in the course of a journey. Because the assault on the child was not committed in a moving automobile or during a temporary stop in a longer journey, but rather "in a fixed building susceptible of exact location," we held that the Act did not apply, and that the Commonwealth had failed to prove the trial court's jurisdiction. *Id.,* 170 Pa.Super. at 268, 85 A.2d at 608. *See also Commonwealth v. Mull,* 316 Pa. 424, 426–27, 175 A. 418, 419 (1934). In the cases where the Journey Act has been held to give the trial court jurisdiction, one of the two conditions above has been present, that is, the crime was committed in a moving vehicle or during a temporary stop in a longer journey. *See Commonwealth v. Hainds,* 448 Pa. 67, 292 A.2d 337 (1972); *Commonwealth v.*

*Ruby,* 240 Pa.Super. 377, 367 A.2d 1100 (1976); *Commonwealth v. Stefanowicz,* 133 Pa.Super. 501, 3 A.2d 22 (1938); *Commonwealth v. Brown,* 71 Pa.Super. 575 (1919).

■ In the present case, as in *Tarsnane,* the crimes were committed at a place susceptible of exact location. Indeed, the victim led the police to the very place where he was beaten and robbed, in Lancaster County. The crimes occurred outside of the automobile, and whatever journey the victim had been on by virtue of his abduction, had terminated when he was taken from the automobile, beaten, and left at the scene. It is therefore apparent that the Journey Act is not applicable. Appellant having asserted no other basis for jurisdiction in Chester County, the general rule obtains the subject-matter jurisdiction of criminal courts extends only to offenses committed within the county of trial. *See, e. g., Commonwealth v. Tumolo,* 223 Pa.Super. 189, 299 A.2d 15 (1972), *aff'd,* 455 Pa. 424, 317 A.2d 295 (1974); *Commonwealth v. Simeone,* 222 Pa.Super. 376, 294 A.2d 921 (1972). Since Chester County lacked jurisdiction over the offenses that appellant committed in Lancaster County, and the Commonwealth could not convict him there on all the offenses committed in connection with the victim's abduction and beating, the Commonwealth was not precluded from bringing simultaneous prosecutions in the two counties.[4]

## II. Jury Charge

Appellant first objects to the lower court's refusal to give the following instruction:

> You are instructed that if you find Eugene Walter Frank was in an intoxicated condition at the time of the alleged incidents then you must return a verdict of not guilty on all counts.

4. See also 18 Pa.C.S.A. § 112(1) (1973) which provides:

A prosecution is not a bar within the meaning of section 109 of this title (relating to when prosecution barred by former prosecution for same offense) through section 111 of this title (relating to when prosecution barred by former prosecution in another jurisdiction) under any of the following circumstances:

(1) The former prosecution was before a court which lacked jurisdiction over the defendant or the offense.

Instead of giving this instruction, the court charged the jury as follows:

Another question has been raised about how drunk Mr. Frank was. The defense on drunkenness, which was recently pronounced by the Supreme Court, is if a person is so drunk that he can't form an intention to do anything, he is not guilty.

Was this man so drunk that he didn't know what he was doing? Did he not have his ordinary senses within his power of control? Was he so drunk that he didn't remember what happened that night?

He told us, as I understand, pretty succinctly what happened that night. This happened, that happened, this other thing didn't happen. You judge from his account of what happened that night whether or not he was under the influence of intoxicants to the point where he couldn't form this intention, he couldn't knowingly do anything. That's the issue that you must determine.

Appellant objected at trial, and he pursues his objection here, that this charge was inadequate.

At the time of appellant's trial, case law held that if a defendant charged with a crime requiring proof of specific intent put in issue his lack of mental capacity to commit the crime due to his voluntary intoxication, the Commonwealth has the burden of showing that the defendant possessed the requisite intent in spite of his intoxication. *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Pickett*, 244 Pa.Super. 433, 368 A.2d 799 (1976). The courts came to this conclusion by reasoning that because the Pennsylvania legislature allowed, through the enactment of 18 Pa.C.S.A. § 308 (1973), evidence of voluntary intoxication on the issue of intent as a matter of evidentiary law, the Commonwealth had the burden of overcoming this evidence and showing that the defendant had the requisite intent as a matter of constitutional law. *Commonwealth v. Pickett*, 244 Pa.Super. at 437, 368 A.2d at 800.[5]

5. At the time of appellant's trial, 18 Pa.C.S.A. § 308 provided: Intoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution for any offense, evidence

From these decisions it is apparent that the court's charge was both too broad and too narrow. The charge was too broad in that it allowed the jury to exonerate appellant on the charges of aggravated assault and terroristic threats because of his drunkenness. These crimes do not require specific intent, and appellant's intoxication would not have excused him from criminal liability. *Commonwealth v. Grello*, 464 Pa. 250, 346 A.2d 543 (1975). The charge was too narrow in relation to the robbery charge since the critical determination was not whether appellant was too drunk to "form an intention to do anything," but whether he was too drunk to intend to deprive the victim of his money permanently. Appellant is not, however, in a position to take advantage of this error in the charge. His objection to the charge did not recognize, and was made without reference to, the error. Instead, appellant objected to the charge because it did not state his theory of the law, as embodied in his point for charge. That point vastly overstated the exonerating effect of voluntary intoxication, and the court was correct in refusing it. By insisting upon his mistaken point, appellant failed to alert the court to the errors that in fact existed in the charge. Since appellant's objections at the conclusion of the charge were similarly insufficient, the objection he makes now has been waived. *Commonwealth v. Haywood*, 464 Pa. 226, 233, 346 A.2d 298, 301 (1975) (Roberts, J., concurring); *Commonwealth v. Ewell*, 456 Pa. 589, 598–97 n. 7, 319 A.2d 153, 157 (1974); *Commonwealth v. Sisak*, 436 Pa. 262, 269–70 n. 5, 259 A.2d 428 (1969).

of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense.

The legislature has since amended this provision to read:

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may any evidence of such condition to be introduced to negative the element of intent of the offense . . . [except where the charge is murder].

18 Pa.C.S.A. § 308 (Supp.1978–79).

Thus, were appellant's case to arise today, he would not be entitled to a charge on voluntary intoxication.

Appellant next objects to the lower court's refusal to instruct the jury that they could find appellant guilty of simple assault if they found that the victim's injuries did not amount to "serious bodily injury." *See* 18 Pa.C.S.A. § 2702(a)(1) (1973). Simple assault is, of course, a lesser-included offense of aggravated assault. *Commonwealth v. Wilks,* 250 Pa.Super. 182, 378 A.2d 887 (1977), and appellant was entitled to the requested instruction if there was any evidence adduced at trial, no matter how improbable, that might have supported a conviction of simple assault. *Commonwealth v. Wilds,* 240 Pa.Super. 278, 362 A.2d 273 (1976); *Commonwealth v. Walker,* 178 Pa.Super. 522, 116 A.2d 230 (1955). Here, there was no such evidence. If the jury believed the Commonwealth's evidence, they had to find that the victim's injuries were "serious."[6] Since appellant did not attempt to show that the victim only suffered lesser injuries, no issue was presented to the jury on this point. Appellant was therefore not entitled to the requested charge. *Commonwealth v. Franklin,* 248 Pa.Super. 145, 374 A.2d 1360 (1977); *Commonwealth v. Melnyczenko,* 238 Pa. Super. 203, 358 A.2d 98 (1976); *Commonwealth v. Dessus,* 214 Pa.Super. 347, 257 A.2d 867 (1969).[7]

Appellant next objects that the lower court's review of the evidence was defective. However, reading the charge as a whole, as we must, *Commonwealth v. Davenport,* 462 Pa. 543, 557, 342 A.2d 67, 73 (1975); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975), we are convinced that the court's charge was adequate and did not prejudice appellant. Although the court misstated minor facts in its

**6.** See description of appellant's injuries, *supra* at 2 n. 2.

**7.** Nor do we believe that the lower court erroneously refused to instruct the jury that they could draw an adverse inference from the Commonwealth's failure to call two witnesses who were named on the bill of indictment. The record shows that these witnesses were available for appellant to call, and that appellant did not seek to secure their presence when informed during trial that the Commonwealth was not going to call them.

review of the evidence, appellant has not shown how he was prejudiced by the misstatements.[8]

We have reviewed appellant's other objections to the charge and find them without merit.

### III.  Trial Errors

Appellant argues that he was denied a fair trial for the following reasons: 1) Several Commonwealth witnesses referred to the crimes appellant committed in Chester County on the night of the incident; 2) during appellant's trial a local newspaper published an article concerning the convictions of appellant's co-defendants; 3) during the trial several jurors observed appellant in handcuffs; and 4) appellant was prejudiced by certain remarks made by the court in front of the jury.

As regards appellant's first argument, we note that references to appellant's prior criminal activities are sprinkled throughout the trial transcript.  However, almost all of these references occurred during cross-examinations conducted by appellant's counsel and all of the Commonwealth's witnesses restricted their testimony on direct examination to the crimes that occurred in Lancaster County.  Also, during the testimony of the Commonwealth's witnesses appellant objected only once on the ground that the testimony improperly implicated him in prior crimes.  That objection came

---

**8.** The court confused the testimony of the two co-defendants who testified.  The court stated that Daniel had testified that appellant kicked the victim, when in fact Grant was the one who so testified. The court also stated that Daniel admitted on the stand that he was a convicted felon, when in fact Daniel testified that he had been incarcerated, indicted, and tried on charges arising out of the incidents occurring on the night of August 24.  Our cases hold that not "any and every variance between the evidence and the [trial] judge's summary will constitute reversible error."  *Commonwealth v. Crawford,* 452 Pa. 326, 332, 305 A.2d 893, 896 (1973).  *See also Commonwealth v. Taylor,* 453 Pa. 539, 309 A.2d 367 (1973).  Rather, the misstatement must be material before an otherwise valid conviction will be reversed.  It is pertinent to note that Daniel was not called by appellant as a witness, nor was Daniel's credibility essential to appellant's defense.  Under the circumstances of this case, we do not believe that the misstatements were material enough to require a new trial.

during appellant's cross-examination of the victim, and concerned the following testimony:

Q. How can you identify this gentleman [appellant] as the gentleman who was there given you didn't see his face?

A. How could I identify him?

Q. Yes?

A. I'll tell you how I can identify them. When they come into the bar that night at 7:00 o'clock he sat right directly in front of me—

Q. At that time—

A. Can I finish please?

At 11:00 o'clock when he come in again he sat right directly in front of me. He came in back with a broken bottle in front of me—

(Record at 116–17)

Appellant's motion for a mistrial immediately followed but was denied on the ground that the witness's response fairly met appellant's question. The court also refused to give cautionary instructions.

The general rule in Pennsylvania is that the Commonwealth cannot introduce evidence of distinct crimes against a defendant in a prosecution for a separate offense. *E. g., Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917, *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973); *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 364 A.2d 454 (1976). When, however, defense counsel puts a question to a witness that cannot be answered fairly without a statement of fact as explanation, then the explanation is deemed to be invited by counsel, and complaint that it was added to the answer cannot be made. *Commonwealth v. Rivers,* 238 Pa.Super. 319, 357 A.2d 553 (1976); *Commonwealth v. Brown,* 229 Pa.Super. 211, 324 A.2d 392 (1974); *Commonwealth v. McGonigle,* 228 Pa.Super. 345, 323 A.2d 733 (1974); *Commonwealth v. Dalton,* 199 Pa.Super. 388, 185 A.2d 653 (1962).

■■■■ In the case at bar, the Commonwealth, in compliance with a pre-trial ruling by the court, carefully limited its proof to the crimes for which appellant was being tried. Nevertheless, testimony of other criminal activity was heard by the jury, primarily during appellant's cross-examination of the witnesses. Virtually none of this testimony need concern us now since appellant did not object to it at the time it was given, and hence waived his objections. *Commonwealth v. Barnette*, 235 Pa.Super. 62, 340 A.2d 548 (1975) (alternate holding); *Commonwealth v. Lockhart*, 227 Pa.Super. 503, 322 A.2d 707 (1974); *Commonwealth v. Harding*, 225 Pa.Super. 84, 310 A.2d 326 (1973). The testimony quoted above, to which appellant did object, was given during the course of an extensive cross-examination of the victim concerning the reliability of the victim's identification of appellant at the scene of arrest. Prior questioning by defense counsel had revealed that the victim's eyes were swollen at the time and that appellant's head was so turned that the victim could not see all of his face. When defense counsel persisted in probing the victim as to the basis for his identification, counsel should have anticipated that the victim might mention his prior encounters with appellant and his reasons for remembering this particular man so well. Since the victim's response was thus invited by appellant's counsel, appellant cannot now complain.

■■■ Additionally, the record shows that prior to the testimony that prompted appellant's objection and motion for mistrial, appellant had elicited from the victim at least four other references to criminal acts committed by appellant in Chester County, yet counsel made no objections to any of this testimony, even though one of the references explicitly repeated the victim's allegation that appellant had used a broken beer bottle in leading him from the bar. Moreover, in his cross-examination of John Daniel later in the trial, appellant's counsel specifically directed Daniel to comment on criminal proceedings against himself and appellant in Chester County. Finally, appellant himself when he took the stand not only admitted to committing crimes in

Chester County on the night of the incident, but also admitted on direct examination that prior to the night of the incident he had been "involved in another case similar to this one in which I was charged with practically the same offenses: Kidnapping, Assault and Battery, this and that." Record at 362. Thus, even if we assume that the victim's response in the testimony quoted above exceeded the scope of appellant's question, the prejudice appellant suffered as a result was negligible in light of other trial testimony, much of which appellant specifically elicited, and all of which was unobjected to. Hence, any error was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Cannon*, 453 Pa. 389, 309 A.2d 384 (1973); *Commonwealth v. Jones*, 233 Pa.Super. 52, 335 A.2d 444 (1975).

Appellant's argument that he was prejudiced by newspaper publicity is similarly without merit. The "prejudicial" newspaper publicity of which appellant complains consisted solely of a single newspaper article appearing on the backpage of a local newspaper. Nothing in the record shows that the article was anything but a routine, factual mention of the convictions of two of appellant's co-defendants. Moreover, upon being apprised of the article, the lower court gave cautionary instructions to the effect that if any juror had read the article, he was to ignore it completely and base his vote only on the facts adduced at trial. Under the facts of this case, the court's instruction was sufficient to prevent prejudice to appellant. *See Commonwealth v. Snopek*, 200 Pa.Super. 455, 459, 190 A.2d 161, 163, *allocatur refused*, 200 Pa.Super. xxx, *cert. denied*, 375 U.S. 933, 84 S.Ct. 338, 11 L.Ed.2d 265 (1963); *Commonwealth v. Morrison*, 180 Pa.Super. 133, 118 A.2d 263, *allocatur refused*, 180 Pa.Super. xxix, (1955), *cert. denied*, 352 U.S. 823, 77 S.Ct. 31, 1 L.Ed.2d 47 (1956).

Nor is appellant entitled to a new trial on the ground that during the course of the trial several jurors observed him outside the courtroom in handcuffs. Our courts have held that not every observation of a defendant

in handcuffs by members of the jury is so inherently prejudicial as to require a mistrial. *See Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Evans,* 465 Pa. 12, 348 A.2d 92 (1975); *Commonwealth v. McGonigle, supra; Commonwealth v. DeMarco,* 225 Pa.Super. 130, 310 A.2d 341 (1973). The circumstances must indicate a substantial possibility that the defendant was prejudiced, or that the authorities were negligent in the performance of their duty to ensure that the jury would not see the defendant in restraints. *See Commonwealth v. Davis, supra; Commonwealth v. Cruz,* 226 Pa.Super. 241, 311 A.2d 691 (1973). In the present case, there is no evidence that the negligence of court personnel caused the observations, and the chance that appellant was prejudiced is small in light of the Commonwealth's very substantial proof of appellant's guilt, appellant's own damaging testimony at trial, and the fact that appellant's co-defendant, Russell Grant, who was free on bail throughout the trial and appeared in court without restraints, was also convicted. Moreover, we are mindful that some error in a protracted trial, such as this, will unfortunately occur, but that our cases consistently hold that if the error did not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed. *Commonwealth v. Ravenell,* 448 Pa. 162, 171, 292 A.2d 365, 369 (1972); *Commonwealth v. Lopinson,* 427 Pa. 284, 307, 234 A.2d 552, 565 (1967), *vacated and remanded on other grounds,* 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968); *Commonwealth v. Thomas,* 410 Pa. 160, 171, 189 A.2d 255, 261 (1963), *cert. denied,* 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963); *Commonwealth v. Barnak,* 357 Pa. 391, 419, 54 A.2d 865, 878 (1947). " 'Although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. "A defendant is entitled to a fair trial but not a perfect one." ' " *Commonwealth v. Martinolich,* 456 Pa. 136, 162, 318 A.2d 680, 695, *appeal dismissed,* 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974) (citations omitted).

Nor was appellant denied a fair trial because of comments made by the lower court to appellant and his counsel in front of the jury. Although the lower court did, unfortunately, express some annoyance with appellant and his counsel while the jury was present, none of the comments show hostility. Moreover, the record shows that there was reason for the lower court's annoyance. The majority of the comments to which appellant now objects were made during appellant's exploration of matters largely irrelevant to the trial. "A trial judge is not required to remain mute when counsel speaks of irrelevant and prejudicial matters. . . . Counsel may properly be admonished on such occasions without nullifying the entire trial as long as the trial judge does not display partiality or prejudice by his conduct, manner of speech, or choice of language." *Commonwealth v. Phillips*, 183 Pa.Super. 377, 384–85, 132 A.2d 733, 737 (1957) (citations omitted.) To a great extent, appellant's actions invited the court's comments. In addition, our cases hold that " '[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.*' " *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973) (citations omitted) (original emphasis). Although some of the court's remarks were inappropriate, even when appellant's own conduct is considered, appellant is still not entitled to a new trial since the record fails to show that he was prejudiced by the comments.

## IV. Rule 1100

Appellant's final argument is that his right to a speedy trial under Pa.R.Crim.P. 1100 was violated.

A written complaint charging appellant with the crimes for which he was convicted was filed in Lancaster County on October 2, 1974. Thus, the Commonwealth was

required to bring appellant to trial by March 30, 1975, one hundred eighty days later.[9] Trial was scheduled for March 21, but on March 20 appellant's counsel was subpoenaed to appear before the Pennsylvania Commonwealth Court on the following day. The Commonwealth proceeded to trial against two of appellant's co-defendants as originally scheduled, and on March 26, petitioned pursuant to Rule 1100(c) for an extension of time for commencing trial against appellant. That same day the lower court granted the Commonwealth an extension of one hundred twenty days. The record does not disclose whether appellant's counsel was served with a copy of the Commonwealth's application as required under 1100(c), or whether appellant ever filed a petition in opposition to the application for extension. On May 9, 1975, however, appellant did file an application pursuant to Rule 1100(f) for dismissal of charges. The Commonwealth opposed the application, and on May 14 it was denied without a hearing by the court. No other applications under the Rule were filed by either appellant or the Commonwealth until the day of trial, July 28, 1975. On that date, appellant's counsel presented the court with appellant's hand-written *pro se* Petition for Writ of Habeas Corpus and Motion to Dismiss with Prejudice, in which appellant argued that his original Rule 1100(f) petition should have been granted. The court denied the writ and motion.

Appellant's contention that he should be discharged because the Commonwealth exceeded the lower court's order

9. There is no merit to appellant's contention that the one hundred eighty day period prescribed in Rule 1100(a) commenced on August 25, 1974, the date on which a prior written complaint was filed in Chester County charging appellant with beating and robbing the victim. As discussed above, Chester County lacked jurisdiction over the crimes appellant committed in Lancaster County. Charges arising out of those crimes were properly dismissed by the Chester County authorities, and the date from which the one hundred eighty days must be computed is October 2, 1974, the date on which a written complaint against appellant was first filed in Lancaster County. Cf. *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976) (the prescribed period in Rule 1100 commences with the filing of a subsequent complaint when the initial complaint was substantively defective and thus properly dismissed by a magistrate).

of March 26 granting it a one hundred twenty day extension to bring appellant to trial, may be summarily dismissed. Although trial did not begin until four days after the one hundred twenty days had elapsed, appellant failed to present this objection in a Rule 1100(f) petition prior to trial, and thus has waived it. The 1100(f) petition appellant filed on May 9 perforce could not preserve objections to delays occurring two months later. Moreover, appellant's *pro se* motion to dismiss presented on the day of trial failed to make the objection.

The only issue that appellant possibly has preserved for appeal concerns the propriety of the court's grant of the extension itself. Appellant argues that the extension was unwarranted because the Commonwealth failed to show that it had acted with due diligence in bringing appellant to trial. Unfortunately, we are unable to rule on the merits of appellant's claim because of the incompleteness of the record.

Rule 1100(c) permits the Commonwealth to apply to the trial court for an order extending the time for commencing trial against a defendant. One requirement for an extension, however, is the service on the defendant's attorney by the Commonwealth of a copy of its petition. After service is made, the defendant has the right to a hearing on whether an extension of time should be given. These notice and hearing requirements are not mere procedural formalities. They are of paramount importance to defendants. If a defendant is given notice of the petition to extend and his right to be heard, his failure to exercise his opportunity to contest the petition will be construed as a consent to the extension, and he will not be allowed to object to the extension at a later date through a Rule 1100(f) motion to dismiss the charges. *See, e. g., Commonwealth v. Taylor,* 473 Pa. 400, 374 A.2d 1274 (1977); *Commonwealth v. Burton,* 246 Pa.Super. 498, 371 A.2d 946 (1977).

As noted above, the record before us fails to disclose whether appellant's counsel was properly served

with a copy of the Commonwealth's petition for an extension, and if so, whether counsel took appropriate steps to contest it. Nor does the record disclose whether a hearing on the petition was ever held. The judgment of sentence, therefore, must be vacated, and the case remanded for a determination by the lower court of whether appellant waived his rights under Rule 1100. If appellant was given proper notice, yet failed to exercise his right to contest, then he waived his objections to the extension, and the judgment of sentence should be reinstated. In such event, the lower court will not have to reconsider the merits of appellant's Rule 1100(f) petition since that petition was inadequate to preserve his objections to the extension. We note, however, that the burden of showing that appellant has waived his rights under Rule 1100 is on the Commonwealth, as it is in all instances where the waiver of fundamental rights is involved. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976).[10] On the other hand, should the court determine that proper notice was not given appellant, the court must then determine whether appellant compromised or waived his Rule 1100 rights in other ways so as to make his trial timely. If appellant did not, the court shall discharge appellant. *Commonwealth v. Brett,* 262 Pa.Super. 326, 396 A.2d 777 (1978).

In conclusion, we wish to note that this is not the first time this court had been confronted with an incomplete

10. Should appellant's sentence be reinstated, credit must be given for the time he has spent in custody as a result of the crimes he committed on August 24, 1974. Although convicted first in Chester County, appellant was sentenced first in Lancaster County. The sentence he ultimately received in Chester County was made consecutive to the Lancaster sentence. Under these circumstances, credit against his Lancaster sentence must be given from the date of his initial incarceration under the terms of 18 Pa.C.S.A. § 1360(4) (Supp. 1978–79). *See also* Pa.R.Crim.P. 1406. It should be observed that this calculation will not allow appellant double credit for the time he served prior to his sentencing in Lancaster County. Once credit is given against his Lancaster County sentence under 18 Pa.C.S.A. § 1360(4), the time appellant has served in custody is no longer "a result of" the charges that arose in Chester County within the meaning of subsection (1) of that provision, and thus cannot be credited against the sentence he received there.

record when called upon to determine the propriety of a Rule 1100(c) extension. We have stressed in the past, and stress again today, the necessity of having Rule 1100 proceedings transcribed and made of record. *Commonwealth v. Tome,* 248 Pa.Super. 242, 375 A.2d 78 (1977). Especially in cases where the defendant fails to contest the petition for extension, proof of proper service should appear, as well as the Commonwealth's evidence supporting the petition and the court's reasons for granting it.

Judgment vacated and remanded for proceedings consistent with this opinion.

CERCONE, P. J., concurs in the result.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision in this case.