484 A.2d 783

**COMMONWEALTH of Pennsylvania**

v.

**John CHANNELL, Appellant.**

Superior Court of Pennsylvania.

Submitted May 2, 1984.

Filed Nov. 16, 1984.

440

442

Jonathan Blum, Assistant Public Defender, Wilkes-Barre, for appellant.

Joseph Giebus, Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before SPAETH, President Judge, and BROSKY and BECK, JJ.

BROSKY, Judge:

This appeal is from judgment of sentence imposed subsequent to conviction in a trial by jury of Aggravated Assault

and Recklessly Endangering Another Person. Appellant raises three issues. First, he contends that the trial court erred in refusing to instruct the jury on the lesser included offense of simple assault. Second, he argues that a mistrial should have been granted. Third, he raises the alleged excessiveness of his sentence. Judgment of sentence is vacated on the aggravated assault and reckless endangerment convictions and remanded for a new trial. Appellant does not prevail on the second issue and the third issue is not reviewable at this time.

Appellant first argues that the trial court erred in not charging the jury on the crime of simple assault.[1] He contends that there was testimony of record which, if believed, would have justified a verdict of not guilty of aggravated assault or of reckless endangerment but guilty of simple assault. The point in dispute is whether appellant used a knife in the altercation in question.[2]

The testimony for the prosecution is accurately summarized in the trial court opinion.

> The first witness for the Commonwealth, Samuel Wither-spoon, testified that he was an inmate at the State Correctional Institution at Dallas; and that on November 23, 1981, he was stabbed by Defendant. According to Witherspoon, Defendant accused Witherspoon of "looking wrong" at Defendant, and, despite Witherspoon's efforts to avoid conflict, "sucker punched" Witherspoon. Witherspoon, expecting a fist fight, turned toward Defendant and was surprised when Defendant pulled a knife from

---

**1.** We note that this issue was preserved by a timely objection. See *Commonwealth v. Rineer*, 310 Pa.Super. 241, 456 A.2d 591 (1983).

**2.** If a knife were used appellant could be found guilty of aggravated assault under, *inter alia*, 18 Pa.C.S. § 2702(a)(4), "... attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon ..." If the jury did not believe that a knife was used they might have found appellant guilty of simple assault, 18 Pa.C.S. § 2701.

Similarly, if the jury did find that a knife was used, they could return a verdict of guilty of reckless endangerment, which involves conduct that places or may place a person in danger of "serious bodily injury," 18 Pa.C.S. § 2705. Their disbelief in the use of the knife would, conversely, justify their verdict of guilty of simple assault, causing "bodily injury." See *Commonwealth v. Cavanaugh*, 278 Pa.Super. 542, 420 A.2d 674 (1980).

his sleeve and stabbed Witherspoon in the left hand, Defendant swinging the knife downward and Witherspoon throwing his hand upward to block the knife. Witherspoon then ran for safety and Defendant was grabbed by prison guards. Lastly Witherspoon identified the weapon used by Defendant to stab Witherspoon. The second witness, Basil Demian, is employed as a correction officer at the State Correctional Institution at Dallas. Officer Demian testified that on the day of the stabbing he saw Witherspoon running from Defendant and Defendant running after Witherspoon. Officer Demian grabbed Defendant and another correction officer, David Carpin, took the weapon which was taken from Defendant and identified it. The knife identified by Officer Demian was the same as that identified by Witherspoon.

The third witness was Correction Officer David Carpin. Officer Carpin verified the testimony given by Officer Demian and also identified the knife taken from Defendant.

The fourth witness, Robert Carriglitto, the Health Care Administrator at Dallas Correctional Institution, verified that Witherspoon was treated on November 23, 1981, for a puncture wound of his left hand and explained the nature of treatment given according to the records of the dispensary.

Finally, Pennsylvania State Trooper George Nowakowski testified that he investigated the stabbing incident and in the process interviewed Defendant. Trooper Nowakowski stated that Defendant admitted not only stabbing Witherspoon but also wanting to kill Witherspoon.

Certainly the above-summarized testimony is sufficient to prove Defendant's guilt of the crime of aggravated assault and battery beyond a reasonable doubt.

There is an abundance of testimony that appellant had and used a knife on the victim. But this testimony is not uncontradicted. At four separate points appellant testified that he did not have a knife in the fracas. Another inmate,

a friend of appellant's, corroborated this by testifying that he had not seen a knife in appellant's possession on the occasion in question.

* * *

The question before us on appeal is whether, given the above testimony, the trial court was required to give a charge on the crime of Simple Assault.

A useful summary of the applicable law in this area was presented in *Commonwealth v. Wilds*, 240 Pa.Super. 278 at 287–8, 362 A.2d 273 at 278 (1976) (Hoffman, J.) (citations omitted).

> "It is well settled that upon an indictment for a particular crime, the defendant may be convicted of a lesser offense included within it...". It is also clear that an offense is a lesser included offense if each and every element of the lesser offense is necessarily an element of the greater. ... It is not error, however, for a judge to refuse to instruct the jury on the lesser-included offense unless the evidence could support a conviction on the lesser offense. "There is no duty on a trial judge to charge upon law which has no applicability to presented facts. ...". If under the evidence at trial, the jury *must* either convict the accused of the greater offense or acquit him it is not error to refuse an instruction on a lesser-included offense. ...Conversely, if it is rational for the jury to render a verdict of not guilty of the greater offense but guilty of the lesser, it is incumbent upon the judge to instruct the jury on the law related to the constituent offense if so requested by counsel. ..."It should be emphasized, however, that before a charge on ... [a lesser-included offense] is required, there thus must be some evidence, from whatever source, which would permit the jury to return such a verdict."

■ At the outset it must be noted that Simple Assault is a lesser included offense of Aggravated Assault and of Reckless Endangerment. *Commonwealth v. Cavanaugh*, 278 Pa.Super. 542 at 546, 420 A.2d 674 at 676 (1980). Thus

the first element necessary for the requested charge is present here.

The simultaneous functioning of two of the basic precepts quoted above is the focus of our enquiry here, since it was a misapprehension of that interplay which spawned the error below. How is it consistent to state that *"some* evidence, from *whatever* source" will suffice to mandate a lesser included offense charge and, on the other hand, to make reference to the court's appraisal of the rationality of a jury's potential interpretation of those facts? The trial court here apparently concluded that, despite testimony to the contrary, it would not be rational for the jury to find, as a matter of fact, that a knife was not used by appellant. An affirmance here would require our holding that in a criminal jury trial the *court* can find certain evidence incredible, unbelievable, so that the jury does not have the opportunity to convict on a lesser charge—as it would if that evidence were believed by them.[3]

■ We do not so hold. The "rationality" principle does have a role in determining whether the charge on the lesser included offense should be given; but that principle, as properly applied, does not have primacy over the "some evidence" principle. A review of these two concepts will make this apparent.

■ These two principles are presented in a Circuit Court of Appeals Case.[4]

Two prerequisites [to denying a request for a lesser included offense instruction] seem vital: that there be no factual dispute and that a finding contrary to the only evidence on the issue would be irrational.

---

3. Certainly if this were a permissible role for the trial court, this case would present a situation for its proper application. It is quite understandable that the trial court would find the absence of a knife wielded by appellant to be, simply, beyond rational belief.

4. This, and other non-Pennsylvania cases cited herein, are not binding on us in this Pennsylvania law matter. However, as statements of the common law, we welcome the guidance they provide.

*Driscoll v. U.S.*, 356 F.2d 324 at 327 (1st Cir., 1966) as quoted, with brackets added, in *U.S. v. Comer*, 421 F.2d 1149 at 1154 (D.C.Cir., 1970).

### *Some Evidence* [5]

Our examination of the first of the two rules under consideration will start with a United States Supreme Court case. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. U.S.*, 380 U.S. 343 at 350, 85 S.Ct. 1004 at 1009, 13 L.Ed.2d 882 at 888 (1965). It is on this disputed factual element of the greater offense that there must be some evidence. As has been noted above, there was testimony given in the instant trial that a knife was used by appellant and also testimony to the contrary. The finding of fact on this matter would be determinative as to whether appellant could be found guilty of aggravated assault or merely simple assault.

█ It is the presence of any quantum of evidence countering the prosecution's which will activate the need for the charge on the lesser included offense; "no matter how improbable" that evidence may be. *Commonwealth v. Frank*, 263 Pa.Super. 452 at 467, 398 A.2d 663 at 670 (1979) (Spaeth, J.).[6]

█ Other jurisdictions have come to the same conclusion. It has been repeatedly written that if, upon any view of the facts, a defendant could properly be found guilty of a lesser degree or an included crime, the trial judge must

**5.** A more complete and accurate heading would be "Some evidence rebutting the evidence of an element of the greater offense, which element is not an element of the lesser offense." Due to the cumbersome quality of such a heading, it is placed here in a note.

Of course, in order for "some evidence" of this type to be necessary for an additional charge on the lesser offense, there must be evidence of the elements of the greater offense. The burden of proof on that account falls on the prosecution.

**6.** As will be seen, *infra*, this is only one of the two alternative circumstances necessitating a charge on the lesser included offense. Even in the absence of any direct evidence countering the prosecution's, if a rational inference to that effect could be drawn from the evidence, then the charge will also be required.

submit such lower offense. And it does not matter how strongly the evidence points to guilt of the crime charged in the indictment, or how unreasonable it would be, as a court may appraise the weight of the evidence, to acquit of that crime and convict of the less serious.

*People v. Mussenden,* 308 N.Y. 558, 127 N.E.2d 551 at 553 (1955). It can be seen that, whatever rationality the trial court is to determine, it is not the jury's rationality in believing the evidence.

■ The Supreme Court of another sister state, Kansas, echoes New York's high court. "Whether the evidence [which] tended to support the lower degrees of the offense appears to the court to be weak and unsatisfactory; the accused is nevertheless entitled upon request to have the issue and the effect of the evidence submitted to the jury..." *State v. Cunningham,* 120 Kan. 430, 243 P. 1006 at 1006 (1926). "The evidence pointing to a lesser offense ... need not be strong or extensive to require instructions to the jury with regard thereto." *State v. Clark,* 214 Kan. 293, 521 P.2d 298 at 303 (1974). This remains true even if "it might be difficult for any trier of the fact to make the ... finding" of not guilty of the greater offense. *People v. Munoz,* 9 N.Y.2d 638, 210 N.Y.S.2d 533 at 533, 172 N.E.2d 291 at 292 (App.Div., 1961).[7]

The "some evidence" rule appears, from the foregoing, to be rather absolute. It remains to be seen whether the other principle—rationality—permits what the first principle prohibits.

## Rationality

The trial court interpreted this second prerequisite for giving the lesser included offense charge as allowing it to

7. It is worth nothing that this evidence supporting an acquittal on the greater charge and a conviction on the lesser degree can be supplied "from any part of the total proof." The defense evidence need not "be either accepted or rejected in its entirety." *People v. Asan,* 22 N.Y.2d 526, 293 N.Y.S.2d 326 at 330, 239 N.E.2d 913 at 916 (1968). "And there may be 'some evidence' of a lesser offense even though this depends on ... believing defendant as to part of his testimony and prosecution witnesses on other points in dispute." *Belton v. U.S.,* 382 F.2d 150 at 155 (D.C.Cir., 1967).

evaluate whether the disputed evidence on the greater offense was credible. If this interpretation is correct it would be inconsistent with the "some evidence" rule. As could be expected, the trial court's definition of this principle was inaccurate. The correct role of this requirement is given in *U.S. v. Comer, supra* at 1154.

> Even if the trial court finds that the facts bearing upon the element required for the greater offense but not for the lesser are not in dispute and that no evidence introduced explicitly tends to negative a finding of the element in question, the inquiry is not at an end. Rather the court must appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference.

As the above quotation indicates, the "rationality" prerequisite does not conflict with the "some evidence" prerequisite. This is because the rationality test is not applied if there is any disputed evidence on the greater offense. Only when there is no disputed evidence should the court apply the rationality test. Further, that test does not look to the credibility of the undisputed evidence; rather, it examines the rationality of inferences which could be drawn from the evidence.

Since in the instant case there was disputed testimony on the greater offense, the trial court was obliged to give the charge on the lesser included offense. In that situation, the rationality test does not come into play. It was, thus, error for the trial court to have utilized that test in the situation before it. The consequent decision not to charge on simple assault was reversible error. Accordingly, judgment of sentence on the aggravated assault and reckless endangerment charges is vacated and the case remanded for a new trial. If, as before, the evidence justifies it, a charge on simple assault is to be given.

\* \* \*

Appellant also contends that a mistrial should have been granted due to the incurable prejudicial effect of

testimony regarding prior criminal activity of appellant. A motion for mistrial was timely made and denied and a cautionary instruction given. The transcript recorded the following exchanges: [8]

MR. CARMODY: Do you know what that is?

MR. WITHERSPOON: Homemade ice pick.

MR. CARMODY: Did you ever see it before?

MR. WITHERSPOON: Yeah.

MR. CARMODY: Where?

MR. WITHERSPOON: On Channell when he was stabbing me.

. . . . .

MR. CARMODY: Did you do anything to provoke Mr. Channell to do this?

MR. WITHERSPOON: No. Unless—it was said that I interferred from him killing another guy. The guy that he was standing there talking to.[9]

MR. BLUM: Objection.

THE COURT: Sustained.

MR. BLUM: Your Honor, I think that we should move for a mistrial at this point.

THE COURT: Step up, please.

(Whereupon, the following discussion took place at side bar:)

---

**8.** Mr. Carmody was the Assistant District Attorney prosecuting the case, Mr. Witherspoon was the alleged victim of the crimes in question and Mr. Blum was the Assistant Public Defender on the case.

**9.** The concurring opinion concludes that this reference is not to a prior crime but to a concurrent event. While this interpretation is a plausible one, it is not clear that the reference was not to a prior event. The issue will, therefore, be treated on its merits.

The concurring opinion goes on to advise the future trial court on the correct disposition of the testimony on hearsay grounds. This argument is not contained in the brief and should not be treated by us on appeal. *Commonwealth v. Harper,* 292 Pa.Super. 192, 436 A.2d 1217 (1981).

Further, it was not raised as such in the court below nor is it contained in the statement of questions on appeal and is not properly before us. *Commonwealth v. Vivian,* 208 Pa.Super. 330, 222 A.2d 739 (1966) affirmed in part, reversed in part, modified in part, 426 Pa. 192, 231 A.2d 301 (1967).

MR. BLUM: I'm moving for a mistrial on the grounds that the Commonwealth asked the question if there was any reason that Mr. Channell had for going after Mr. Witherspoon. And Mr. Witherspoon indicated that it was—the only reason he could think of was whether or not because he had interferred [sic] with Mr. Channell and prevented him from killing another man.

MR. CARMODY: I would answer for the record, Judge, although, it's not necessary, it's proper to make inquiry into the motive of a crime and that's buttress [sic] by the fact that the Defendant and the Commonwealth intend to use it in its case in chief. That he was attempting to kill Inmate Renninger and that Inmate Witherspoon interferred [sic] and that's why he went after him.

THE COURT: Well, motion for mistrial is denied. I'm willing—I think that reasons for this coming about are that he did, in fact, interfere and I see nothing wrong with his saying that. If that's the reason that he feels, that's why there was the reason for this.

MR. BLUM: It's conjecture.

THE COURT: I would let you cross-examine. If Witherspoon says he was stabbed by this Defendant and the question was, did he do anything to provoke him, I think that there is nothing wrong with that question if this is what happened.

If there is any cautionary instruction you want to give, I'll be happy to give it, but you have to tell me what cautionary instruction you want.

MR. BLUM: I don't see where a cautionary instruction is going to be helpful at this point.

THE COURT: I don't know what to tell the jury. I'll tell the jury whatever you ask me to providing it's legally correct. On the other hand, the only cautionary instruction I think is to disregard the statement insofar as whether he was interferring, preventing another—this Defendant from killing somebody else. But, if this is all that's been transpiring between them, this is the subject matter of this assault.

MR. BLUM: The only cautionary instruction that I would ask the Court to give the jury is to instruct the jury that Channell is on trial for aggravated assault and recklessly endangering another and not on trial for—

THE COURT: I'll be happy to do that.

MR. BLUM: —murder or something like that.

(Whereupon, the discussion at side bar was concluded the following took place in open court:)

MR. CARMODY: No further questions.

THE COURT: Ladies and gentlemen of the jury, I'm going to direct that you disregard the last statement concerning interference with an attempted killing or something of that kind. The fact of the matter is that the Defendant, in this case, Mr. Channell, is charged with aggravated assault and battery and that's the charge that's before you. The incident that Mr. Witherspoon referred to has nothing to do with this particular case and disregard it. Okay.

MR. CARMODY: Thank you, Your Honor.

THE COURT: Cross-examine, please.

MR. BLUM: Thank you, Your Honor.

In its opinion the trial court suggested that the mistrial issue was waived.

... This response by Witherspoon was so prejudicial, Defendant claims, that a mistrial was mandated.

This argument lacks merit. To begin with, the Trial Judge promptly asked Defense Counsel if he wished a cautionary instruction (N.T. 16). Defense Counsel requested such an instruction and suggested the contents of same (N.T. 16–17). The Court then complied with Defense Counsel's request, and told the jury to disregard Witherspoon's statement about interfering with Defendant's "attempted killing" (N.T. 17). The Court also instructed the jury that the charge of aggravated assault and battery was the only charge before the jury, that the incident referred to by Witherspoon had nothing to do with the case before the jury, and that the jury was to

disregard it (N.T. 17). Certainly this instruction was sufficient to correct any prejudice that might have arisen. Indeed Defense Counsel did not object to or request any elaboration on the cautionary instruction. Such silence can be well interpreted as satisfaction with the efficacy of the instruction, as can the failure of Defense Counsel to renew his motion for a mistrial. That being so, the matter might well have been waived by Defendant.

We find, to the contrary, that appellant did not waive the mistrial issue. First, his motion for a mistrial was timely made and denied. That, along with its inclusion in post-verdict motions, preserved the issue for our review. Counsel's participation in the formulation of a cautionary instruction does not invalidate his motion. This would be so whether his cooperation in the design of the instruction was enthusiastically offered or, as here, only grudgingly obtained after the statement, "I don't see where a cautionary instruction is going to be helpful at this point." Counsel should not be, and, we hold, is not, put in the position of saying to the court below, "If you do not grant my motion for a mistrial, I will not make a suggestion for a curative instruction." Such a stance is tantamount to gambling with his client's interests. For, if on appeal it is held that the error did not justify a mistrial, he will have foregone at trial the beneficial effect of the curative instruction.

The critical point is that counsel made his motion for a mistrial and neither expressly withdrew it nor did he mislead the court by impliedly withdrawing it. Nor was counsel under any obligation to renew his motion after the instruction. It is counsel's duty to be a vigilant advocate not a contumacious pest.

Having determined that this issue is properly before us, it remains to be seen if appellant prevails on it. He does not.

First, in appellant's favor, the testimony in question appears to refer to prior criminal activity. Second, this evidence is relevant to show motive, an exception to the general rule against admissibility. *Commonwealth v. Ter-*

*rell*, 234 Pa.Super. 325, 339 A.2d 112 (1975). However, simply because the evidence comes within the list of exceptions, does not result in its *de facto* admissibility.

[E]ven if the evidence is arguably admissible under the motive exception, the court must balance the need for the evidence against its potential prejudice in order to determine its admissibility. *Commonwealth v. Wright*, 259 Pa.Super. 293, 393 A.2d 833 (1978). The court must balance on the one side the actual need for the evidence of other crimes in light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed by the accused, the strength or weakness of the other crimes evidence in supporting the issue, and on the other side, the degree to which the jury will probably be prejudiced by the evidence. *Id.*, 259 Pa.Superior Ct. at 299, 393 A.2d at 836.

*Commonwealth v. Mitchell*, 314 Pa.Super. 364 at 367, 460 A.2d 1182 at 1184 (1983).

Assuming, *arguendo*, that the balancing test here results in the conclusion that the evidence is inadmissible, as the trial court itself held, one more question must be answered. Can, in this instance, the curative instruction overcome the prejudicial effect of the inadmissible testimony?

 The question remains because curative instructions do not, without exception, cure.

In a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury. *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978). In *Commonwealth v. Williams*, supra [470 Pa. 172] at 178, 368 A.2d [249] at 252 [ (1977) ], this Court stated:

[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint, resulting from an improper

reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial....

The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. Id. at n. 4.

*Commonwealth v. Richardson*, 496 Pa. 521 at 526–7, 437 A.2d 1162 at 1165 (1981).

■ On the one hand, the prosecutor admitted that he had intentionally elicited this testimony. On the other hand, the "nature of the reference" was not so severe that the curative instruction would have been ineffective.

We acknowledge that the sort of determination to be made here is not subject to verification. How can this Court truly ascertain what sort of prejudicial impact certain testimony has on a jury, much less the ability of curative instructions to undo that harm? At best we are left with uncertain conclusions, based on our experience, conscience and the collective wisdom of our fellow judges independently reviewing the same material.

One consideration has been critical in our thought process here—the context in which the disputed remark was made. At the time the testimony came in the jury was already aware that appellant was incarcerated in a state prison and was on trial for allegedly having engaged in a stabbing of another inmate. Given that background we do not conclude that the brief reference to an attempted homicide would so inflame the jury that they could not, given a curative instruction, focus on the admissible testimony before them.

This is to be distinguished, for example, from the situation present in *Commonwealth v. Walentoski*, 300 Pa.Super. 559, 446 A.2d 1300 (1982), where, in a trial for theft, reference was made to defendant's potential for killing adverse witnesses.

Therefore, we conclude that appellant is not entitled on the basis of this issue to a new trial on the reckless endangerment charge.[10]

\* \* \*

Appellant finally contends that his sentence is excessive. We do not reach this argument since appellant's sentence on both aggravated assault and reckless endangerment charges has been vacated and remanded for a new trial.

\* \* \*

Judgment of sentence vacated on the aggravated assault and reckless endangerment charges and remanded for a new trial consistent with this opinion. Jurisdiction relinquished.

SPAETH, President Judge, files a concurring statement.

SPAETH, President Judge, concurring:

I agree with the majority that appellant was entitled to have the jury charged on simple assault because it is a lesser included offense of both aggravated assault and reckless endangerment. I also agree that the sentences for aggravated assault and reckless endangerment must therefore be vacated and the case remanded for a new trial on all charges. I write separately because I believe that we should address appellant's argument regarding the victim's testimony as to why appellant attacked him. The victim testified, after being asked whether he had done anything to provoke the attack, *"[I]t was said* that I interferred [*sic* ] from him killing another guy. The guy that he was standing there talking to." (Emphasis added.) Appellant argues that the trial court erred in admitting this testimony into evidence with a cautionary instruction. This issue will almost surely arise again at the new trial that we have ordered, and in my opinion we should offer the trial court some guidance regarding it.

---

**10.** A new trial has, however, been granted on the reckless endangerment charge on the basis of the faulty charge.

I cannot agree with the majority that the challenged testimony should be analyzed as a reference to prior criminal activity. Majority op. at ——.[1] It was a reference to appellant's activity at the time of the attack and was relevant to establish appellant's intent. As such, its admissibility at the new trial will depend upon who, if anyone, said that the witness interfered with appellant killing a third person. If it is established that a bystander made the statement to the victim, then the trial court will have to consider whether the testimony is inadmissible hearsay. In this regard, if appellant made it to the witness, it would be hearsay but admissible under the admissions exception to the hearsay rule. It may prove that no one may actually have said anything to the witness, and that the witness's rather abstract phrasing may be only his opinion regarding why appellant attacked him. If this proves to be the case, the statement will have to be analyzed as an opinion by a lay witness, based upon first-hand observation, but with great potential for prejudicial effect.

---

1. Nor do I believe appellant so contends. He argues that the testimony was "either irrelevant or so highly prejudicial that a mistrial should have been granted." Appellant's Brief at 4. He elaborates on this by arguing that the testimony was inadmissible as a statement referring to an "independent" and unrelated crime, and also, that the statement should be analyzed by applying to it "a similar balancing test [to that] involving the introduction of prior crimes." Appellant's brief at 8–9.