J-A28010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGEL L. MENDEZ, JR. | : | |
| | : | |
| Appellant | : | No. 243 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 6, 2019
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001148-2018

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                 **FILED:  DECEMBER 14, 2021**

Angel L. Mendez, Jr., appeals from the judgment of sentence,[1] entered

in the Court of Common Pleas of Lebanon County, following his convictions for

aggravated assault causing serious bodily injury,[2] simple assault causing

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although Mendez purports to appeal from the January 4, 2021, order denying post-sentence motions, Johnson's appeal properly lies from the November 6, 2019 judgment of sentence. **See Commonwealth v. Chamberlain**, 658 A.2d 395, 397 (Pa. Super. 1995) (order denying post-sentence motion finalizes judgment of sentence; thus, appeal is taken from judgment of sentence, not order denying post-sentence motion). **See also Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001). Accordingly, we have corrected the caption.

[2] 18 Pa.C.S.A § 2702(a)(1).

bodily injury,[3] simple assault by mutual affray;[4] disorderly conduct,[5] and public drunkenness.[6] After careful consideration, we affirm.

On June 16, 2018, Mendez attended a cookout at the home of his brother-in-law and half-sister, Richard and Adrienne Ruhl,[7] starting at 1:00 p.m. N.T. Jury Trial, 7/23/19, at 16-17. Richard testified that Mendez took a bottle of tequila from Richard's room and became increasingly aggressive and drunk. *Id.* Richard, Adrienne, and Mendez left to get food at a diner where, according to Richard, Mendez laid on a sofa and passed out causing a diner employee to tell Richard that Mendez could not be there. *Id.* at 18-19.

Mendez and Richard returned to Richard's house and drank beer by the garage while Adrienne took her kids to get slushies. *Id.* at 19-20. Richard testified that Mendez began to use profanity and show attitude by calling himself the "N-word;" claiming he was from New Jersey; calling himself Angel Lucifer Mendez instead of his real name, Angel Luis Mendez; and stating that "he gives life; he takes life." *Id.* at 20. Richard told Mendez he was from Pennsylvania, not New Jersey, which Richard claims caused Mendez to become "aggressive and nasty," and led Richard to attempt to calm Mendez down. *Id.*

_____

[3] 18 Pa.C.S.A § 2701(a)(1).

[4] 18 Pa.C.S.A § 2701(b)(1).

[5] 18 Pa.C.S.A. § 5503.

[6] 18 Pa.C.S.A. § 5505.

[7] Hereinafter, we refer to both Richard and Adrienne Ruhl by their first names to avoid confusion.

Richard testified that he told Mendez that once Adrienne came back, Richard and Adrienne would take Mendez home. *Id.*

Richard testified that after he closed the garage door, Mendez charged at him. *Id.* at 21. Richard claimed he put down his beer shortly before Mendez tackled him to the ground, and that once Richard got back up, Richard was hit and fell unconscious. *Id.* While Mendez claimed Richard hit him with a beer bottle, Richard claimed that he never knew how or if his beer bottle struck Mendez, but he pled guilty to simple assault without justification because of a bruise and laceration on Mendez's face, the fact that the beer bottle was broken after the fight, and the possibility that his actions caused "glancing contact" with Mendez. *Id.* at 22, 30, 41.

Adrienne testified that, after returning home from getting slushies, she found Mendez standing over Richard, who was lying in the driveway. *Id.* at 61. Adrienne testified that Mendez told her Richard hit him with a bottle, so Mendez defended himself. *Id.* Adrienne also stated that both Richard and Mendez had been drinking that day, although she did not remember if Mendez took a tequila bottle from her and Richard's room. *Id.* at 63.

Carl Brubaker, who lived across the street diagonally from Richard and Adrienne's home, testified that he heard shouting and somebody saying, "[Y]ou are nothing but a New Jersey n@#ger," and someone called the other a "f@#got." *Id.* at 66, 68. Shortly after that, somebody said, "[D]on't come at me." *Id.* at 66. This led Brubaker to call the police, and during the call, Brubaker heard "about a dozen hits that may have landed." *Id.* After it got

quiet, Brubaker heard somebody say something like, "I always loved you. You always hated me. You were always against me, but yet you hit me in the face with a bottle." *Id.*

Officer Ryan Haase of the North Lebanon Township Police Department responded to the scene that night, and shortly after arrival, arrested Mendez. *Id.* at 74-75. Mendez told Officer Haase that he only hit Richard two or three times after Richard threw a beer bottle at him. *Id.* at 75-76.

Officer Randall Morgan of the North Lebanon Township Police Department arrived at the scene of the fight after Officer Haase and followed the ambulance carrying Mendez to the hospital. *Id.* at 82-83. Officer Morgan gave Mendez a *Miranda*[8] waiver, which Mendez signed, and Mendez agreed to give Officer Morgan a written statement, which read: "I, Angel Mendez, was attacked, hit numerous times with a bottle, [used] self-defense to protect myself, [and] struck [my] opponent back for my defense." *Id.* at 85. Officer Morgan testified that Mendez had glassy eyes and an odor of alcohol on his breath and that Mendez stated he had a couple drinks that day. *Id.* at 85-86. Mendez told Officer Morgan that he hit Richard two or three times and, after initially stating that he did not know what started the fight, Mendez said the fight started because he believed Richard was racist. *Id.* at 86, 90. Officer Morgan testified that Mendez suffered a laceration on his pinky and ring fingers on his right hand, suffered a laceration and a contusion above his left

---

[8] *Miranda v. Arizona*, 348 U.S. 436 (1966).

eye, had a very swollen left-side of his face, and had blood all over his clothing. *Id.* at 88.

Mendez testified that, at some point after 5:00 p.m., Richard told Mendez to go upstairs to retrieve a bottle of tequila that contained less than a shot, which Richard drank. *Id.* at 116. Mendez testified that he and Richard drank three beers each before he, Adrienne, and Richard went to the diner, where he did not pass out and just used the bathroom before leaving. *Id.* at 115. Mendez testified that after returning to Adrienne and Richard's house, Richard asked him to hang out outside while Adrienne took the kids to get slushies. *Id.* at 117-18. Mendez testified that Richard complained about sending Mendez and his mother a generator in Puerto Rico, where Mendez temporarily stayed, while Richard lost power for two days over that summer. *Id.* Richard told Mendez that he did not really go through a disaster from hurricanes in Puerto Rico. *Id.* at 118. Mendez testified that he told Richard that Richard did not have to help Mendez and Mendez's mother, which caused Richard to call him a "n@#ger" and "f@#got". *Id.* Mendez testified he paid Richard no attention until Richard stood up and hit Mendez in the eye with his beer bottle while Mendez was sitting down. *Id.* at 119.

Mendez said he stood up and asked Richard "why he hit him" and begged him to "not come at him" while Mendez walked away, but Richard laughed and, using the bottle, hit Mendez in the back of the head twice more, breaking the bottle and leading Mendez to defend himself. *Id.* at 119-20. Mendez said he subsequently punched Richard three times with his fists; the first punch

buckled him, but then Richard got back up, so Mendez hit him twice more, fearing Richard's size difference.[9]  *Id.* at 23, 121.  Richard subsequently fell over, leading Mendez to state, "I love you.  Why did you hit me with a bottle?" N.T. Jury Trial, 7/23/19, at 122.

Richard spent three days in the hospital.  *Id.*  He suffered two orbital tears, bruising to the neck, a broken nose, a broken jaw, and three missing teeth.  *Id.* at 23.  Richard stated that the hospital staff informed him he was lucky to not have severe brain injuries and that after his swelling lessened, they would need to perform a facial surgery, which had a "good chance" of killing him.  *Id.*  at 22-23.  After the staff wired Richard's jaw shut, he lost 30 pounds over the following six weeks.  *Id.* at 23.  Following the incident, Richard's foot dropped,[10] causing him to walk with a limp, wear a leg brace, and undergo physical therapy.  *Id.* at 26.  The assault also caused Richard to suffer some memory issues.  *Id.* at 44.

Karima Fitzgerald, M.D., who was qualified as an expert in the field of general surgery, testified that as a result of the assault, Richard suffered:  two orbital fractures; nasal fractures near his sinus, mid-face, and teeth; facial swelling; and fractures at the base of his skull.  *Id.* at 56.  Doctor Fitzgerald

---

[9] Richard weighed around 202 pounds at the time, while Mendez weighed about 170 pounds.  Presentence Face Sheet, 8/12/19, at 5.

[10] Foot drop is a general term for difficulty lifting the front part of the foot and results from an underlying neurological, muscular, or anatomical problem. *See* https://www.mayoclinic.org/diseases-conditions/foot-drop/symptoms-causes/syc-20372628 (last visited Nov. 24, 2021).

testified that these facial fractures could lead to a stroke or, with enough swelling, impede Richard's airways. *Id.* at 56-57. Thus, the fractures required surgical treatment. *Id.*

During jury deliberations, the trial court allowed all photographs, including those photos depicting Richard's injuries following the assault, to be published to the jury, but the jury saw no other exhibits. *Id.* at 135. Defense counsel did not formally object to the trial court's decision but requested the court not to publish to the jury any of the exhibits unless the jury requested them. *Id.* When asked to explain his reasoning, defense counsel simply reiterated that the jury had not requested them. *Id.* During trial, defense counsel only objected to the admission and publication to the jury of Exhibit Eleven, which depicted Richard's injuries, but acquiesced to the admission and publication to the jury of all other exhibits. *Id.* at 24-25, 76-77, 87-88, 97. Shortly before deliberations, the trial court asked each attorney's opinion as to which exhibits should be published to the jury for deliberations. *Id.* at 135. The Commonwealth moved to publish all exhibits, and defense counsel responded that exhibits should only be published upon request. The trial court informed counsel all photographic exhibits would be published. *Id.* Defense counsel did not object. *Id.*

During deliberation, the jury asked the trial judge the following question: "Regarding substantial risk of death. Does it apply to the surgery that resulted from the offense or from the assault that night?" *Id.* at 137. The trial court answered: "If somebody would not have needed a surgical

intervention, but only needed the surgical intervention because of the assault, and the surgical intervention, itself, created a substantial risk of death, then the assault by definition creates a substantial risk of death." ***Id.*** at 137. After receiving the court's answer to the question, defense counsel did not object. However, the following exchange took place before the court issued its response to the jury:

> [Defense Counsel]: Your Honor, in this case the Commonwealth called an expert witness who described the various injuries [that] required that level of surgery. I believe the basis of evidence before that was a layman's understanding of what was perhaps, and to put the fate of that on that level of testimony would be –
>
> [Trial Court]: I'm answering the question. I think it is a legal question. I don't know what they are basing their decision on. I don't know what their analysis of the facts is, but it is a simple legal question. I am going to answer it.
>
> [Defense Counsel]: [Alright].

***Id.*** The instruction was then given with no objection. ***Id.*** at 138.

On July 23, 2019, a jury convicted Mendez of the above-listed offenses. The trial court merged the two simple assault convictions with the aggravated assault conviction and sentenced Mendez to an aggregate term of forty-two to eighty-four months of incarceration and to pay restitution in the amount of $13,276.23 to Richard and $64,758.50 to Health Analytics. Mendez did not file post-sentence motions or a direct appeal.

On March 10, 2020, Mendez filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, alleging that trial counsel was ineffective for failing to file a direct appeal. The court scheduled

a hearing for October 1, 2020, but on August 21, 2020, the parties stipulated to the reinstatement of Mendez's post-sentence and direct appellate rights. On August 25, 2020, the PCRA court issued an order reinstating those rights. Mendez filed his post-sentence motions on September 4, 2020, which were denied on January 4, 2021. On January 26, 2021, Mendez filed a timely notice of appeal. Both the trial court and Mendez complied with Pa.R.A.P. 1925.

On appeal, Mendez raises five issues for our review:

1. Whether the evidence was insufficient to establish crimes of [a]ggravated [a]ssault[,] [s]imple [a]ssault[,] [d]isorderly [c]onduct[,] [p]ublic [d]runkenness when [Mendez] raised the claim of self-defense at trial?

2. Whether the verdicts on the counts of [a]ggravated [a]ssault[,] [s]imple [a]ssault[,] [d]isorderly [c]onduct[, and] [p]ublic [d]runkenness are against the weight of the evidence because the jury placed too great a weight on the testimony of the Commonwealth's witness [Brubaker,] who did not see what happened between [Mendez] and [Richard], but only heard what happened?

3. Whether the trial court abused its discretion by allowing the publication of the victim's photograph[s, which were] prejudicial to the outcome of [Mendez's] case?

4. Whether the trial court abused its discretion by implementing an improper jury instruction as to the definition of ["]substantial risk of death["] and its application to [the offense of a]ggravated [a]ssault?

5. Whether the [m]otion for [r]econsideration/[m]odification of [s]entence should be granted because [Mendez]'s sentence is unduly excessive in light of the circumstances raised above[?]

Appellant's Brief, at 6-7.

Mendez's first argument challenges the sufficiency of the evidence. Specifically, Mendez argues that he properly raised a self-defense claim at trial and that the Commonwealth failed to rebut it. Appellant's Brief, at 15. Mendez points out that Richard pled guilty to simple assault and started the ensuing violence by throwing his beer bottle at Mendez. *Id.* at 15-16. He is entitled to no relief.

We begin by noting that Mendez's Rule 1925(b) statement raised the issue of sufficiency only as it relates to his convictions for aggravated and simple assault. Accordingly, insofar as he now seeks to challenge the sufficiency of the evidence supporting his disorderly conduct and public drunkenness convictions, those claims are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in 1925(b) statement are waived).

The standard of review for a challenge to the sufficiency of the evidence is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted). This Court accepts as true all direct and circumstantial

evidence, and all reasonable inferences, upon which the jury could have based its verdict. *Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019); *Commonwealth v. Perez*, 931 A.2d 703, 706-07 (Pa. Super. 2007).

"A person is guilty of aggravated assault if he . . . causes [serious bodily injury] intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A § 2702(a)(1). Serious bodily injury is "[b]odily injury which creates a substantial risk of death[,] or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. If the victim suffers serious bodily injury, the Commonwealth does not need to prove specific intent to establish aggravated assault, but only needs to prove the defendant acted recklessly under circumstances manifesting extreme indifference to the value of human life. *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa. Super. 1997). To establish recklessness for aggravated assault, an offensive act must be performed under circumstances which almost assure that injury or death will ensue. *Id.*

A defendant guilty of aggravated assault is *per se* guilty of simple assault as "simple assault is a lesser included offense of aggravated assault." *Commonwealth v. Channell*, 484 A.2d 783, 787 (Pa. Super. 1984). A person is guilty of simple assault by mutual affray if the simple assault is committed while "in a fight or scuffle entered into by mutual consent," which

reduces the charge to a third-degree misdemeanor. 18 Pa.C.S.A §
2701(b)(1).

Self-defense is the use of force toward another person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person." 18 Pa.C.S.A. § 505. Where the defendant successfully raises a self-defense claim, "the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense" by establishing "at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005). Whether the defendant was acting in self-defense is an issue for the jury to decide. *Commonwealth v. Mayfield*, 585 A.2d 1069, 1078 (Pa. Super. 1991).

Here, Richard suffered serious bodily injury because of the blows inflicted by Mendez, including drop foot, missing teeth, multiple facial fractures, and memory loss problems. N.T. Jury Trial, 7/23/19, at 22-23, 56; 18 Pa.C.S.A. § 2301; *Commonwealth v. Rife*, 312 A.2d 406, 409 (Pa. 1973) (skull fracture and concussion resulting in loss of memory were sufficient to sustain grievous bodily harm for purposes of aggravated assault). Richard's injuries also put him at risk of a stroke and required him to undertake life-threatening surgery and wear jaw wiring for six weeks. N.T. Jury Trial,

7/23/19, at 22-23, 56; *see Nichols*, *supra* (blows to head forcing victim to wear jaw wiring constituted serious bodily injury). Similarly, Mendez's repeated blows with his fist to Richard's head were sufficient to demonstrate Mendez acted recklessly with extreme indifference to human life. *See Commonwealth v. Burton*, 2 A.3d 598, 603 (Pa. Super. 2010) (single punch to head causing serious bodily injury showed recklessness sufficient for aggravated assault).

Despite Mendez's claim of self-defense, the record supports the jury's finding as the jury, in weighing credibility, may have chosen to believe Richard's testimony, which completely contradicts Mendez's; Richard describes Mendez as the initial aggressor following a simple dispute, where Mendez would have no reasonable basis to believe he was ever in danger, and that Mendez provoked or continued the use of force, making self-defense unavailable. N.T. Jury Trial, 7/23/19, at 21; *see McClendon*, *supra*; *Commonwealth v. Rohach*, 496 A.2d 768, 771 (Pa. Super. 1985) (testimony alleging that defendant attacked victim without provocation in contrast to defendant's self-defense claim was sufficient to disprove self-defense).

Further, the photographic evidence presented at trial clearly showed the brutality of the assault, which, combined with Brubaker's testimony that he heard about a dozen hits, allowed the jury to infer that, even if Mendez defended himself, he took it too far and continued the use of force beyond that which was necessary to defend himself. N.T. Jury Trial, 7/23/19, at 24,

25, 66-68, 76-77, 87-88, 97; *see McClendon*, *supra*; *Commonwealth v. Gillespie*, 434 A.2d 781, 783-84 (Pa. Super. 1981) (evidence that defendant beat aggressor-victim after aggressor-victim fell unconscious was sufficient to disprove self-defense and established defendant breached duty to retreat). Similarly, that evidence supports the finding that Mendez and Richard both consented to fight, which sustains the verdict of simple assault by mutual affray. 18 Pa.C.S.A § 2701(b)(1); *Commonwealth v. Mathis*, 464 A.2d 362, 366 (Pa. Super. 1983) (contradicted testimony regarding defendant striking victim after victim grabbed defendant was sufficient to sustain simple assault by mutual affray). We conclude, therefore, that the Commonwealth disproved self-defense beyond a reasonable doubt, *Mayfield*, *supra*, and that the evidence was sufficient to sustain the aggravated and simple assault convictions. *Widmer*, *supra*; *Channell, supra*.

Mendez's second argument challenges the weight of the evidence. Appellant's Brief, at 16-17. Without citing case law or identifying an abuse of discretion, Mendez argues only that the jury relied too much on [Brubaker]'s testimony, which only described what Brubaker heard, as he did not witness the incident. *Id.*

We review weight of the evidence claims using an abuse of discretion standard. *Widmer*, 744 A.2d at 753. "The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995). Our review on

appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground. ***Commonwealth v. Chamberlain***, 30 A.3d 381, 396 (Pa. 2011). A trial court's denial of a weight of the evidence claim is one of the least assailable reasons for denying a new trial. ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013). A new trial should be awarded only when "the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id.*** (internal quotation omitted). When reviewing weight of the evidence, "an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail." ***Id.*** at 1056.

The trial court found that the jury's verdict was not against the weight of the evidence, stating:

> The Commonwealth established with credible evidence that both [Mendez] and [Richard] were intoxicated at a cook-out that occurred on July 23, 2019. An argument ensued between the two men that was probably fueled by their intoxication. The disagreement devolved into a physical fight. It was a fight that [Mendez] "won." However, [Mendez] was not satisfied in simply getting the upper hand. Instead, [Mendez] brutalized [Richard] to the point where he was unconscious and without several teeth. Ultimately, [Richard] required hospitalization, surgery[,] and the wiring shut of his jaw.
>
>       *     *     *     *     *     *     *     *
>
> It is obvious that the jury was offended by the sheer brutality of the beating inflicted upon [Richard] by [Mendez]. It is obvious

- 15 -

that [Mendez] lost control of his emotions and utilized force well beyond what was necessary to ward off an attack upon himself. The fact that [Richard] was beaten to the point where he lost consciousness, he lost several teeth, he required transport by ambulance to a hospital, he required inpatient hospitalization, he required surgery and he was forced to live with a jaw that was wired shut for six (6) weeks all support the jury's determination that [Mendez] committed [a]ggravated [a]ssault. For the same reason, the jury's decisions did not shock our conscience and were therefore not against the weight of evidence.

Trial Court's Opinion, 1/4/21, at 7-8.

The trial court's reasoning and factual basis are supported by the record. *Clay*, *supra*; N.T. Jury Trial, 7/23/19, at 21-24, 25, 56-58, 66-68, 76-77, 87-88, 97. We find no abuse of discretion. *Clay*, *supra*; *Widmer*, *supra*.

Mendez next asserts that the trial court abused its discretion in permitting the jury to view all photographic exhibits depicting Richard's injuries during deliberations before the jury requested such exhibits. Appellant's Brief, at 18-19. According to his Rule 1925(b) statement, the specific photos to which Mendez objects are Exhibits One, Two, Three, Four, Five, Ten, Eleven, Fourteen, Fifteen, Sixteen, and Seventeen. While Mendez cites to admissibility case law in his argument, he does not raise a question of admissibility, only publication to the jury, and, further, Mendez only objected to Exhibit Eleven's admission and publication. *Id.*; N.T. Jury Trial, 7/23/19 at 24-25,76-77, 87-88. Mendez neglects to explain how the photographs published to the jury might be prejudicial or inflammatory. Appellant's Brief, at 18-19. Further, immediately preceding deliberations, the trial court asked both parties their thoughts regarding publication, which led defense counsel

- 16 -

Mendez to argue that exhibits should only be published upon the jury's request; however, after the trial court announced it would publish all the photographic exhibits, Mendez made no objection, nor did the trial court consider the argument by Mendez to constitute an objection. *Id.* at 135; Trial Court's Opinion, 1/4/21, at 3. Thus, Mendez has waived his publication claim and we will not review its merits. *See Commonwealth v. Hernandez*, 39 A.3d 406, 412 (Pa. Super. 2012) (brief failing to specify issue or analyze relevant case law waives claim); *Commonwealth v. Boyd*, 679 A.2d 1284, 1289-90 (Pa. Super. 1996) (party must specifically object at trial to preserve evidentiary issues); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (this Court will not act as counsel and will not develop arguments on behalf of appellant).

Mendez's next claims that "the trial court abused its discretion in implementing an improper jury instruction as to the definition of 'substantial risk of death' and its application to [a]ggravated [a]ssault." Appellant's Brief, at 19. Specifically, Mendez argues that the trial judge, the Honorable Bradford H. Charles, misinterpreted the law when answering the jury's question regarding substantial risk of death and whether it applied to the surgical procedure that Richard was required to undergo as a result of the assault. *Id.* at 19-20. Mendez takes issue with Judge Charles' statement that "[i]f somebody would not have needed the surgical intervention because of the assault, and the surgical intervention, itself, created a substantial risk of death, then the assault by definition creates a substantial risk of death."

- 17 -

Appellant's Brief, at 20, quoting N.T. Jury Trial, 7/23/19, at 136-37. However, Mendez does not explain what the correct instruction would have been, or the manner in which Judge Charles misinterpreted the law in his response to the jury's question. *Id.* at 19-20.

Moreover, Mendez never formally objected to the jury instruction; rather, after Judge Charles told counsel what he would tell the jury, but before the jury heard the instruction, counsel argued the question was factual and required an expert witness. N.T. Jury Trial, 7/23/19, at 137-38. Judge Charles interrupted counsel mid-explanation, stating the question was legal and not factual. *Id.* Counsel simply responded "[alright]," conceding the issue instead of objecting to or preserving it. *Id.* Thus, Mendez has waived this claim as well, and we will not review its merits. Pa.R.Crim.P. 647(B); **Commonwealth v. Pressley**; 887 A.2d 220, 225 (Pa. 2005) (mere submission and subsequent denial of proposed points inconsistent with given jury instructions will not preserve issue).

Mendez's fifth and final argument asserts that the trial court erred in denying his motion for sentence modification. Appellant's Brief, at 21. Mendez specifically asserts that the sentence was "unduly excessive in light of . . . [his] acting in self-defense." Appellant's Brief, at 21. However, Mendez did not raise this claim in his Pa.R.A.P. 1925(b) statement, and thus, it is

waived.[11]  ***See*** Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in Rule 1925(b) statement are waived); ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998); ***cf.*** Pa.R.A.P. 1925(c)(3).  While challenges implicating the legality of a sentence can never be waived, challenges to discretionary sentencing can be waived.  ***Commonwealth v. Foster***, 17 A.3d 332, 336-39 (Pa. 2011).[12]

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2021

---

[11] Appellants are not entitled to review of the discretionary aspects of their sentence as of right.  See Commonwealth v. McAfee, 849 A.2d 270, 274 (Pa. Super. 2004).   Rather, appellate jurisdiction to review the claim must be invoked via the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533-34 (Pa. Super. 2006).

[12] The sentence imposed was at the minimum of the mitigated range as applicable to Mendez--42 to 54 months per the Sentencing Guidelines. Presentence Investigation Report, 8/12/19, at 7.